[No. 24934. Department Two. March 15, 1934.]

HARRY L. HAYNES, *Respondent*, v. EARL PIERSON, *Defendant*, WASHBURN-WILSON SEED COMPANY, *Appellant*.[1]

*A. L. Morgan* and *Stotler & Voorhees,* for appellant.
*W. L. LaFollette, Jr.,* for respondent.

TOLMAN, J.—This is an action brought under Rem. Rev. Stat., § 1188-2 *et seq.*, by a landlord to foreclose his statutory lien for rental due upon crops grown on the demised farm land. Personal judgment was entered against the tenant. The lien was established as claimed, and foreclosed upon a certain portion of the crop which had been retained by the sheriff, and the property so retained ordered sold to satisfy the judgment, costs and increased costs. The defendant Washburn-Wilson Seed Company, a corporation, claiming an interest in the crop, has appealed only

[1]Reported in 30 P. (2d) 644.

from that part of the judgment which affects its interests.

The trial court found the facts to be as follows:

"That plaintiff as ·owner and in possession of the lands described in plaintiff's complaint, in the spring of 1933 rented 140 acres of said lands to the defendant Earl Pierson for the cropping season of 1933, and that said defendant Earl Pierson seeded a crop of peas thereon in the spring of 1933 and orally agreed with plaintiff to pay plaintiff as rental for the use of said lands one sack of peas per acre, in all 140 sacks, and 140 acres of said lands were by the said Pierson planted to a crop of peas and a crop of peas grew thereon in 1933.

"That the defendant Earl Pierson was unable to finance the threshing of said peas and that defendant Washburn-Wilson Seed Company, a corporation, financed the harvesting of and did harvest said peas.

"That said Washburn-Wilson Seed Company intended to haul said peas when threshed into the state of Idaho and that it claimed all of said peas because of a contract that said corporation had with Pierson, and said corporation refused to give to plaintiff 140 sacks of peas, or any other amount of peas, as rental.

"The court also finds that the contract between plaintiff as landlord and Pierson as tenant wherein Pierson agreed to pay one sack of peas per· acre as rental for the use of said lands was made orally in Whitman county, Washington, before the seeding of said peas, and that said defendant Pierson subsequently thereto and without the knowledge of the plaintiff, contracted in the state of Idaho with Washburn-Wilson Seed Company, a corporation, the other defendant herein, for the peas which he seeded on said lands in the state of Washington.

"The court also finds that plaintiff, in order to protect himself and obtain his rental for the use of his land, did, on September 14, 1933, prepare and file for record in the office of the county auditor of Whitman county, Washington, his landlord's lien wherein he claimed 140 sacks of peas, or the value thereof, as his

rental under and by virtue of his contract with Pierson, and that on September 14, 1933, said plaintiff instituted this action to foreclose said lien; that the sheriff of Whitman county, Washington, as receiver under appointment of this court, has in his possession 150 sacks of the peas grown on said lands in 1933.

"The court finds that said peas are now, and have been since harvest, worth four cents per pound, cleaned, and that approximately ten per cent of dirt will be cleaned away; that said peas average 128 4/15 pounds to the sack and that 140 sacks, cleaned, would weigh 16,162 pounds and at four cents per pound, said peas would be worth $646.48. That approximately 379 sacks of peas were raised on said lands, all of which were hauled to Moscow, Idaho, except 150 sacks.

"The court finds that plaintiff is entitled for filing said lien the sum of sixty-five cents expended by plaintiff in filing said lien, and that the sum of $75 is a reasonable sum to allow plaintiff as attorney's fees for foreclosing his lien."

These facts are now questioned only in one particular, which will later be given attention.

It will be noted that there is no finding as to just what interest the appellant may have in the crop, but only that it furnished the seed from which the crop was grown, and that it financed the harvesting and threshing of the crop. We may assume, therefore, that appellant was equitably entitled to all of the value in the crop subject and subsequent to the landlord's lien. It does appear from the findings that all of the appellant's interest in the crop arose after the landlord's rights had attached, and without his knowledge or consent.

■ The statute in Rem. Rev. Stat., §§ 1188-2 and 1188-3, provides:

"Every landlord shall have a lien upon the crops growing or grown upon demised premises in any year, for the faithful performance of the terms of the lease,

and for the rent accruing or accrued for such year, whether such rent is to be paid wholly, or in part, in money, or in specific articles of property, or in the products of the premises, or in labor.'' Rem. Rev. Stat., § 1188-2.

''The liens provided for in this act shall be of equal rank, and shall be preferred liens and prior to any other liens or encumbrances upon the crop or crops to which they attach.'' Rem. Rev. Stat., § 1188-3.

This statute is plain and unambiguous. The landlord's rights are thereby made superior and prior to all other liens and encumbrances; and whatever rights appellant may be entitled to under its contract with the tenant, those rights attached only to the tenant's interest in the crop, and are necessarily subject to the landlord's statutory right to a lien upon the entire crop grown, or sufficient thereof to satisfy his just claims.

Appellant appears to question the findings of the court to the effect that the peas were worth four cents per pound, and that the value of one hundred forty sacks, the agreed rental, was $646.48. This objection to the facts found is based not upon any lack of evidence as to market value, but upon the theory that the court should have inquired into the contract between the appellant and the tenant, and should have established the lien only upon the tenant's interest in the crop which remained in him unencumbered after the rights of the appellant were satisfied.

In support of this theory, there was offered in evidence a written contract between the tenant and the appellant, dated April 4, 1933, covering the furnishing of seed by the appellant to the tenant for the purpose of planting this land ''owned by Harry Haynes landlord.'' In the contract were covenants to the effect that the crop to be raised should be and remain the

property of the appellant, that the seed furnished should be returned out of the crop harvested and for the remainder of the crop, if found marketable, and after being properly cleaned and graded, the tenant should be paid at the rate of 1½ cents per pound for his services in growing the crop.

The trial court very properly held that this contract was wholly immaterial as against the landlord, but received it so that the record might be made complete.

What we have already said as to the landlord's rights disposes of this question also. The value per pound as fixed by the trial court is complained of only because the court did not limit the landlord's rights to the supposed interest or equity represented by the 1½ cents per pound due to the tenant as between himself and the appellant. But clearly, no landlord can be bound by such a contract unless he becomes a party thereto. Here, the appellant dealt with a tenant known to be a tenant, and made no attempt to deal with the landlord, or even to notify him of what was contemplated. It cannot, therefore, in reason now complain because the landlord asserts his superior statutory right.

Appellant seems to lay great stress upon the case of *Ferry & Co. v. Smith*, 36 Ida. 67, 209 Pac. 1066, but there was no question of a statutory or other landlord's lien in that case. The case was decided as if the litigation had arisen between the parties to the contract, and therefore it has no bearing upon the present issue. The Idaho court seems to have held, in effect, that a landlord, who has no lien on crops grown, cannot interfere with the tenant's disposition of those crops, whether made before or after the crop is grown. Since neither that question nor the question of the rights of the appellant as against the tenant with whom it contracted,

616

is presented by the record now before us, we express no opinion upon either subject.

The judgment is affirmed.

BEALS, C. J., HOLCOMB, BLAKE, and GERAGHTY, JJ., concur.