FEDERAL · LAND BANK OF SPOKANE, Appellant, *v.*
GREEN et al., Defendants, APPELGREN, Admr., Re-
spondent.

(No. 7,819.)

(Submitted February 9, 1939. Decided March 8, 1939.)

[90 Pac. (2d) 489.]

58

*Messrs. Henry R. Newton* and *K. W. MacPherson,* of the Bar of Spokane, Washington, *Mr. Thomas Dignan* and *Mr. Otis A. Hallett,* for Appellant Federal Land Bank of Spokane, and *Mr. Frank M. Catlin,* for Appellant M. B. Fargen, submitted a brief; *Mr. Digman* and *Mr. Catlin* argued the cause orally.

*Mr. John M. Kline* and *Mr. Arlie M. Foor,* for Respondent, submitted a brief; *Mr. Kline* argued the cause orally.

On petition for rehearing by Appellant Bank, *Mr. Dana E. Brink,* of the Bar of Spokane, Washington, and *Mr. Hugh R. Adair,* joined above counsel for Appellant.

*Messrs. John G. Brown, William A. Brown, Paul W. Smith, David R. Smith, J. Miller Smith, Jr., Arthur F. Lamey* and *James W. Freeman, Amici Curiae,* joined in support of the petition for rehearing; *Mr. Freeman* submitting a brief.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action was brought by the plaintiff bank to foreclose a real estate mortgage executed to it by defendants Fremont T. and Mary L. Green. Defendant J. C. Herman filed an answer and cross-complaint in which he asserted and asked foreclosure of a materialman's lien for lumber and materials alleged to have been furnished by him to complete the construction of a building situated on the lands involved in the complaint. Before trial Herman died and Appelgren, the administrator of his estate, was substituted in his place as a party defendant. Also prior to the trial the bank's mortgage was placed in good standing, and it was stipulated that the trial court should proceed upon the cross-complaint for foreclosure of the materialman's lien, the bank's reply thereto and Fargen's answer, which was in effect a general denial of the allegations of the cross-complaint.

Trial was to the court without a jury. The court found the issues in favor of cross-complainant that the materialman's lien was prior and superior to any right, title, interest or lien of Fargen or the bank upon the dwelling house and one acre of land, and directed its foreclosure. Motion for new trial being denied, this appeal was taken by Fargen and the bank.

The first point raised by the appeal is that the proof was not sufficient to establish that Herman furnished the materials in question, it being contended that the evidence shows conclusively that the materials were furnished by the Farmers Lumber Company, a co-partnership consisting of Herman and Nason, and that the action should have been brought by the surviving partner under section 10261, Revised Codes, and *White v. Prahl,* 94 Mont. 345, 22 Pac. (2d) 315, and other cases to the same effect.

The evidence bearing upon the question as to who furnished the materials is as follows:

Green, who admitted purchasing the materials, said he purchased them from J. C. Herman. Fred C. Williams, who was working for Herman, also testified that Green bought the materials from Herman; that sometimes Herman made the sales and sometimes he did, and whoever made the sales entered the transactions in the account book. On cross-examination Williams testified as follows:

"Q. Now then, by the way, whose record is this? A. Mr. Herman's record.

"Q. It isn't a record of any other lumber company? A. No, sir.

"Q. The Farmers Lumber Company? Is this a record of the Farmers Lumber Company? A. Mr. Herman was running the business at that time. * * * ."

He further testified on cross-examination:

"Q. Never mind the corporation. It is a record of the Farmers Lumber Company, isn't that correct? A. Yes.

"Q. And Mr. Herman was merely running it, wasn't that a fact? A. Yes.

"Q. He was merely manager of it? A. Yes.

"Q. He was a partner in it, wasn't he? A. So far as I know.

"Q. Who is the other gentleman here, this Mr. Nason? He was another partner in it, wasn't he? A. He wasn't in the state at all.

"Q. Was he a partner in the business at the time, just temporarily absent? A. Yes.

"Q. He was an owner in it at the same time, wasn't he? A. I think so.

"Q. Besides Mr. Nason now being an owner in it, there was Mr. Herman and who else? A. Nobody else that I know of.

"Q. Just those two. They were the owners of the Farmers Lumber Company, weren't they? A. Yes.

"Q. And this is a record of the Farmers Lumber Company— of those two individuals, isn't it? A. Yes, sir."

A circumstance tending to show that the account was that of the Farmers Lumber Company was the account itself which

was filed with the lien and made an exhibit in the cross-complaint, which sets forth:

"Fremont Green,

Benrud, Mont.

In account with

Farmers Lumber Co."

However, the lien which was introduced in evidence had attached to it a copy of the account in which it is stated:

"Fremont Green, Benrud, Mont.

In account with

J. C. Herman

Farmers Lumber Company."

We are advised in the brief that the billhead was printed and ██ ██ the name of "J. C. Herman" was written in with a typewriter. This, however, does not appear from the record. It is all in typewriting here. The record is in such a condition that a finding either way might have been warranted; that is, there is some evidence that Herman furnished the materials sold, and there is also some evidence upon which a finding might have been based that the partnership did so. In such a situation we accept the conclusion of the trier of the facts.

The rule is that even in the case of discrepancy between the testimony of witnesses for one party, if that most favorable to him sustains his right of recovery, the finding in his favor must be sustained, even though there be room for a finding against him on other evidence submitted by him. (*Hardie* v. *Peterson,* 86 Mont. 150, 282 Pac. 494; *Gohn* v. *Butte Hotel Co.,* 88 Mont. 599, 295 Pac. 262; *In re Cummings' Estate,* 92 Mont. 185, 11 Pac. (2d) 968; *Stranahan* v. *Independent Natural Gas Co.,* 98 Mont. 597, 41 Pac. (2d) 39.)

The reason why an action must be brought in the name of ██ the real party in interest is to protect the adversary from another suit on the same cause, but by a different party. The reason for the rule does not apply here. No other party can assert the lien. If Nason has any interest in the claim he cannot harass the bank or Fargen, but must look to Herman's estate.

The appellants next contend that the lien itself is insufficient in that it does not describe the building on which the lien is claimed; that there are several buildings on the land of a frame character—a dwelling house, a hog house, a granary, a barn, chicken shed and a blacksmith shop.

The lien recites that J. C. Herman furnished lumber and building material *"for that certain frame building erected upon the certain lot, piece or parcel of land hereinafter described* * * * ."* The lien contained a description of the land by legal subdivisions, together with a list of materials furnished, which list was expressly made a part of the lien. The question is, Does this lien meet the requirements of section 8340, Revised Codes, reading as follows: "Every person wishing to avail himself of the benefits of this chapter must file with the county clerk of the county in which the property or premises mentioned in the preceding section is situated, and within ninety days after the material or machinery aforesaid has been furnished, or the work or labor performed, a just and true account of the amount due him, after allowing all credits, and containing a correct description of the property to be charged with such lien, verified by affidavit, but any error or mistake in the account or description does not affect the validity of the lien, if the property can be identified by the description; which paper containing the account, description, and affidavit is deemed the lien, and when there is an open account between the parties for labor, material, or machinery, such lien may be filed within ninety days after the date of the last item in such account, and include all items and charges contained therein, for material or machinery furnished for, or work performed on, the property on which the lien is claimed."

This court has long since held that this section, together with all sections referring to liens, must be liberally construed; that "while the right to a lien is purely statutory, and compliance with the statute is necessary to the existence of a lien (*McGlauflin* v. *Wormser,* 28 Mont. 177, 72 Pac. 428), the necessary steps once having been taken, the lien law is subject to the most liberal construction, for it is remedial in character, and rests

upon the broad principle of natural equity and commercial necessity.'' (*Stritzel-Spaberg Lumber Co.* v. *Edwards,* 50 Mont. 49, 144 Pac. 772; see, also, *Rogers-Templeton Lumber Co.* v. *Welch,* 56 Mont. 321, 184 Pac. 838.)

''If the description of the building itself is sufficient to enable a person familiar with the locality to point it out as the only one corresponding with the description contained in the lien, it meets all the requirements of the statute.'' (*Midland Coal & Lumber Co.* v. *Ferguson,* 61 Mont. 402, 202 Pac. 389, 390.) In other words, the requirements of the statute are merely to impart notice to any interested party that the lien attaches to a certain piece of property. (See *Johnson* v. *Erickson,* 56 Mont. 550, 185 Pac. 1116; *Ivanhoff* v. *Teale,* 47 Mont. 115, 130 Pac. 972.)

The appellants would confine the description to the words, ''That certain frame building.'' The respondent argues that if reference is made to the list of materials in the exhibit attached to and made a part of the lien, there can be no uncertainty in ascertaining the building to which the lien applies, for that list contains such items as one kitchen cabinet, 1,500 feet of oak flooring, varnish and other items which would only go into the one building on the premises suitable for their purposes—the dwelling house, and that since there was but one dwelling house on the land described, the lien is sufficient.

Respondent's contention must be sustained. It is incumbent upon any person examining the lien to give heed to its entire contents, and in doing so the lien is just as sufficient as if the lienor had stated: ''My lien applies to that certain frame building for which I furnished one kitchen cabinet, 1,500 feet of oak flooring, varnish, etc.'' (Compare *Leach* v. *Bopp,* 223 Mo. App. 254, 12 S.W. (2d) 512.) Compare *Gem State Lumber Co.* v. *Cameron,* 44 Idaho, 595, 258 Pac. 539, 540, holding that the lien was insufficient when it referred to ''that certain building,'' and there were several buildings in fact, but this holding is qualified by a statement by the court that ''the claim of lien contained no other description.'' Here the nature of the items of the account, the account being a part of the lien,

negatives the fact that most of the items could have been used in any other building than the dwelling house. The fact that the account also contained some items that could not have gone into the dwelling house would not affect the validity of the lien. Those items may be excluded and the lien upheld as to the balance of the items.

Complaint is also made that the particular acre of ground is not sufficiently described. Section 8342, Revised Codes, extends the lien "to the lot or land upon which any such building, improvement, or structure is situated, to the extent of one acre, if outside of any town or city." The particular property required by our statutes to be described is the building or improvement upon which the lien is given, and the statute then extends the lien to the acre of land. (*Western Iron Works* v. *Montana P. & P. Co.*, 30 Mont. 550, 77 Pac. 413.) The decree awards the lien on an acre of land of which the dwelling house constitutes the geographical center. This was proper under our statute which does not itself more particularly describe the particular acre of land to which the lien extends.

The next contention is that if the lien is otherwise valid, it cannot extend to the one acre of land. This contention is based on that part of section 8342 which reads: "But if such person owned less than a fee-simple estate in such land, then only his interest therein is subject to such lien." The gist of the contention on this point is that, since the bank's mortgage was concededly executed and recorded before the materials in question were furnished, the lien on the land would merely attach to the interest remaining in Green at the time the materials were furnished. The part of section 8342 above quoted has no application. Green's interest in the land was not reduced to less than a fee simple title because of the mortgage to the bank. A mortgage creates no estate or interest in land. It is simply security for the performance of an act. (Sec. 8246, Rev. Codes; *Cornish* v. *Woolverton*, 32 Mont. 456, 81 Pac. 4, 108 Am. St. Rep. 598; *Morrison* v. *Farmers & Traders' State Bank*, 70 Mont. 146, 225 Pac. 123; *Barth* v. *Ely*, 85 Mont. 310, 278 Pac. 1002.)

Defendant Fargen succeeded to the rights of Green long after the lien was filed and took subject thereto. Whether the bank's mortgage is inferior to the lien we shall next consider.

It is contended by the bank that, since the mortgage to it was recorded in April, 1930, and since the materials in question were all furnished thereafter, the mortgage takes precedence over the lien. The lien claimant relies upon that part of section 8342, Revised Codes, which reads: "The liens for work or labor done, or material furnished, as specified in this chapter, shall be prior to and have precedence over any mortgage, encumbrance, or other lien made subsequent to the commencement of work on any contract for the erection of such building, structure, or other improvement."

The record discloses that in the fall of 1929 the dwelling house in question was constructed on the land then belonging to Green. It was completed on the outside but not finished inside. There was a sub-floor but no main floor downstairs. The floor upstairs was completed but the stairs were not in, and the doors and window casings on the inside of the house were not in. Some of the windows were not in and the inside painting and staining was not done. It was plastered in August or the first part of September, 1930. The lumber used to construct the building in the fall of 1929 was furnished by the Monarch Lumber Company, and the labor was performed by Ed Gehringer. The mortgage given to the bank was to secure a loan of money used by Green to pay for the labor and materials used to construct the building in 1929. No work was done on the house from the fall of 1929 until the fall of 1930, and during that time it was occupied by Green and his wife as their residence. The first item of the materialman's lien was furnished September 16, 1930, and the last on December 3, 1930.

The fact that the lien in question here is by a different materialman from the one who furnished materials and labor at the commencement of the work for the erection of the building in question is of no consequence under the statute. (*Merrigan* v. *English,* 9 Mont. 113, 22 Pac. 454, 5 L. R. A. 837; *Murray* v. *Swanson,* 18 Mont. 533, 46 Pac. 441; *Davis* v. *Bils-*

66

*land,* 18 Wall. 659, 21 Sup. Ct. 969.) Such is the view of other courts under similar statutes. (*Farmers' Co-operative Union Co.* v. *Rounds & Porter Lumber Co.,* 169 Okl. 346, 37 Pac. (2d) 259; *Winkworth Fuel & Supply Co.* v. *Bloomsbury Corp.,* 266 Mich. 298, 253 N. W. 304; *Golden Belt Lumber Co.* v. *McLean,* 138 Kan. 351, 26 Pac. (2d) 274; *Kay* v. *Towsley,* 113 Mich. 281, 71 N. W. 490; *H. C. Behrens Lumber Co.* v. *Lager,* 26 S. D. 160, 128 N. W. 698, Ann. Cas. 1913A, 1128; *National Mortgage & Debenture Co.* v. *Hutchinson Mfg. Co.,* 6 Kan. App. 673, 50 Pac. 100; *Ulstruck* v. *Home Assn.,* 166 Minn. 183, 207 N. W. 324; *Colonial Trust Co.* v. *Vale-Oregon Irr. Co.,* (D. C.) 265 Fed. 393, 395.) And the rule is that a temporary cessation of work does not prevent the operation of the statute (40 C. J. 267), where there has been no change of design and no evidence of an intention to abandon prosecution of the work. (40 C. J. 267, 268.)

The evidence was sufficient to warrant a finding that the materials in question here were furnished to construct the building which had been commenced in the fall of 1929, and to warrant a finding that the materialman's lien relates back under section 8342, so as to take priority over the bank's mortgage executed after the commencement of the work in the erection of the building.

The case of *Interstate Lumber Co.* v. *Rider,* 93 Mont. 489, 30 Pac. (2d) 644, is not controlling because in that case the lien was for materials used in repairing a completed building.

Finally it is contended that the court erred in allowing interest on the amount found due to cross-complainant. Reliance is placed upon the case of *Eskestrand* v. *Wunder,* 94 Mont. 57, 20 Pac. (2d) 622. In that case the mechanic's lien claimant listed many items to which he was not entitled under the contract as against the owner of the building to whom the materials were furnished. Here cross-complainant was entitled, as against Green, to everything included in his demand. Section 8662, Revised Codes, provides: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested

in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt."

Green, the debtor, was obligated to pay the entire amount claimed in the cross-complaint. He was not prevented by law or by the act of the creditor from paying the debt. He is clearly obligated to pay interest on the entire claim. True, as against the bank and Fargen, the lien contained items which did not go into the building in question, and, hence, cross-complainant overstated the amount of his lienable claim; but the correct amount going to make up the lien was readily ascertainable. It could have been ascertained by the simple expedient of consulting Green and without even consulting cross-complainant. Green frankly stated at the trial just which items went into the building and which did not. There was no offer of payment of the amount which Green admits was lienable so as to stop the running of interest as provided in sections 7446 and 7450, Revised Codes. The court did not err in allowing interest on the amount of the lien.

The appellants in their brief contend that the court made an error in computing the amount due, in that the judgment was $6.50 too much. The court found the amount of the lien as filed to be $860.45. From this amount it deducted $159.05 as the amount represented by items not going into the dwelling house, and hence which should not have been included in the lien. The appellants claim that the testimony of Green conclusively shows that the deductions should have been the amount of $163.05. We have examined the testimony and find the court was warranted under the evidence in excluding only the sum of $159.05.

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, STEWART and ERICKSON concur.

Rehearing denied May 26, 1939.